**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| LUZ S., | : | |
|     Plaintiff, | : | CIVIL CASE NO. |
| | : | 3:20-CV-01573 (JCH) |
| v. | : | |
| | : | |
| KILOLO KIJAKAZI, ACTING COMM'R | : | |
| OF SOC. SEC., | : | MARCH 24, 2022 |
|     Defendant. | : | |

**RULING ON PLAINTIFF'S MOTION TO REVERSE THE DECISION OF THE COMMISSIONER (DOC. NO. 17) AND DEFENDANT'S MOTION FOR AN ORDER AFFIRMING THE DECISION OF THE COMMISSIONER (DOC. NO. 19)**

**I.     INTRODUCTION**

Plaintiff Luz S. ("Luz") brings this action under section 405(g) of title 42 of the United States Code, appealing the final Decision of the Commissioner of the Social Security Administration ("the Commissioner") denying her application for Disability Insurance Benefits ("DIB") benefits.  See Compl. (Doc. No. 1).  She moves to reverse the Decision of the Commissioner.  See Pl.'s Mot. to Reverse the Decision of the Comm'r (Doc. No. 17); Pl.'s Mem. of Law in Supp. of Pl.'s Mot. to Reverse the Decision of the Comm'r (Doc. No. 17-2) ("Pl.'s Mem.").  The Commissioner cross-moves for an order affirming his Decision.  See Def.'s Mot. for an Order Affirming the Decision of the Comm'r (Doc. No. 19); Def.'s Mem. in Supp. of Her Mot. for an Order Affirming the Comm'r's Decision (Doc. No. 19-1) ("Def.'s Mem.").

For the reasons discussed below, the court vacates the ALJ's Decision and remands for further proceedings to develop the record.

**II.     BACKGROUND**

Plaintiff Luz S. filed this action on October 19, 2020.  See Compl.  She had initially filed her DIB application on October 23, 2018, alleging disability beginning on December 29, 2011.[1]  Pl.'s Statement of Material Facts at ¶ 1, 3 n. 3 ("Pl.'s Material Facts") (Doc. No. 17-1); Def.'s Resp. to Pl.'s Statement of Facts at ¶¶ 1, 3 ("Def.'s Material Facts") (Doc. No. 19-2).  Her claim was initially denied on December 28, 2018, as was her request for reconsideration a month later.  Pl.'s Material Facts at ¶ 1; Def.'s Material Facts at ¶ 1.  She then requested a hearing before an Administrative Law Judge ("ALJ"), which was held on December 5, 2019. Pl.'s Material Facts at ¶ 1-2; Def.'s Material Facts at ¶ 1-2.  Following that hearing, the ALJ issued his Decision denying her claim on January 9, 2020.  Pl.'s Material Facts at ¶ 2; Def.'s Material Facts at ¶ 2.  After the Appeals Council denied her request for review, she brought the instant action in this court.  Id.

The court otherwise assumes familiarity with the Administrative Record ("AR") in this case and adopts the undisputed but supported facts as stated by the parties in their Joint Statement of Material Facts.  See Pl.'s Material Facts; Def.'s Material Facts.

**III.    STANDARD OF REVIEW**

The ALJ follows a five-step evaluation to determine whether a claimant is disabled within the meaning of the Social Security Act.  At the first step, the Commissioner considers whether the claimant is currently engaged in substantial gainful activity.  If not, the Commissioner proceeds to the second step and considers

---

[1] The relevant time period for Luz's claim is therefore between December 29, 2011 – her alleged onset date – and December 31, 2016, her date last insured. See AR at 13.

whether the claimant has a "severe impairment" which limits his or her mental or physical ability to do basic work activities.  If the claimant has a "severe impairment", the Commissioner proceeds to step three and asks whether, based solely on the medical evidence, the claimant has an impairment listed in Appendix 1 of the regulations.  See 20 C.F.R. § 416.920(a)(4).  If the claimant has one of these enumerated impairments, the Commissioner will automatically consider that claimant disabled, without considering vocational factors such as age, education, and work experience.  Id.

If the impairment is not "listed" in the regulations, the Commissioner proceeds to step four and asks whether, despite the claimant's severe impairment, he or she has the Residual Functional Capacity ("RFC") to perform past work.  At step five, the Commissioner determines whether there is other work the claimant could perform.  Id. To be considered disabled, an individual's impairment must be "of such severity that he is not only unable to do his previous work but cannot . . . engage in any other kind of substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2)(A).  The Commissioner bears the burden of proof on the fifth step, while the claimant has the burden on the first four steps.  See McIntyre v. Colvin 758 F.3d 146, 150 (2d Cir. 2014).

Under section 405(g) of title 42 of the United States Code, the district court may not review de novo an ALJ's Decision as to whether the claimant was disabled.  See Schaal v. Apfel, 134 F.3d 496, 501 (2d Cir. 1998).  The court's review of the Commissioner's Decision "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard."  Selian v. Astrue, 708 F.3d 409, 417 (2d Cir. 2013) (citation omitted); see

3

also 42 U.S.C. § 405(g). "Substantial evidence" requires "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). If the Commissioner's findings of fact are supported by substantial evidence, those findings are conclusive, and the court will not substitute its judgment in this regard for that of the Commissioner. 42 U.S.C. § 405(g); see also Yancey v. Apfel, 145 F.3d 106, 111 (2d Cir. 1998).

## IV.   ANALYSIS

Luz first argues that the ALJ failed to adequately develop the record. Pl.'s Mem. at 1-12. In particular, she points to the fact that there is evidence of Luz seeing at least ten medical providers, but that "none of these treating physicians have opined as to what [she] can or cannot do on a function-by-function basis."[2] Id. at 1; see also Pl.'s Material Facts at ¶ 39; Def.'s Material Facts at ¶ 39. "Given [Luz's] complicated medical situation", she argues, the "lack of medical source statements is inexplicable" and warrants remand. Pl.'s Mem. at 1-2. The Commissioner counters by highlighting instances where the ALJ did, in fact, request medical source statements from three of Luz's treating physicians, inquiries that those doctors did not respond to. Def.'s Mem. at 5 (citing AR at 731, 739, 743). She also argues that, even in the absence of medical source statements, the record included no obvious gaps and thus the ALJ was not obligated to seek additional information before denying Luz's claim. Id. at 5.

---

[2] She does concede – and the record reflects – that one of these physicians, Dr. Giacomazzi, has provided a medical opinion, but that his opinion "does not contain a function-by-function analysis of [Luz's] condition." Id. at 1 n. 2.

4

An ALJ in a social security benefits hearing has an affirmative obligation to develop the record adequately. See Rosa v. Callahan, 168 F.3d 72, 79 (2d Cir. 1999). Whether the ALJ has satisfied this duty to develop the record is a threshold question. Before determining whether the Commissioner's final decision is supported by substantial evidence under section 405(g) of title 42, "the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." Scott v. Astrue, No. 09-CV-3999, 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (internal quotations omitted).

However, "[t]he Second Circuit has held that it is not per se error for an ALJ to make a disability determination without having sought the opinion of the claimant's treating physician." Delgado v. Berryhill, No. 17-CV-54, 2018 WL 1316198, at *8 (internal quotations and citations omitted). "[A] medical source statement is not necessarily required to fully develop the record where 'the record contains sufficient evidence from which an ALJ can assess the [claimant's RFC].'" Crespo v. Comm'r of Soc. Sec., No. 18-CV-435, 2019 WL 4686763, at *3 (D. Conn. Sept. 25, 2019) (quoting Tankisi v. Comm'r of Soc. Sec., 521 F. App'x. 29, 34 (2d Cir. 2013)). According to the Tankisi court, the "sufficient evidence" standard was at least met when the medical records were "extensive," "voluminous," and included "an assessment of [the claimant's] limitations from a treating physician." Tankisi, 521 F. App'x. at 34. In interpreting Tankisi, another Judge in this District has found that, "[i]n essence, [it] dictates that remand for failure to develop the record is situational and depends on the circumstances of the particular case, the comprehensiveness of the administrative

5

record, and . . . whether an ALJ could reach an informed decision based on the record. Holt v. Colvin, No. 16-CV-1971, 2018 WL 1293095, at *7 (D. Conn Mar. 13, 2018) (internal quotations and citations omitted).

Here, the parties do not dispute the lack of medical source statements in the record. Instead, the Commissioner argues that the ALJ's initial requests for opinions were sufficient to meet his obligations and that, even if they were not, the ALJ already possessed a complete medical history from which his Decision could be supported by substantial evidence. Def.'s Mem. at 4-8. Neither of these arguments are availing.

First, to the extent that the evidence provided by Luz's treating sources, absent a medical source statement, "[did] not provide an adequate basis for a determination of disability, the ALJ must recontact such source to see if additional information is available." Price ex rel. A.N. v. Astrue, 42 F. Supp 3d 423, 433 (E.D.N.Y. 2014). "This duty exists even when the claimant is represented by counsel." Perez v. Chater, 77 F.3d 41, 47 (2d Cir. 1996).³ Indeed, the Secretary's own regulations provide that an ALJ will make "[every] reasonable effort" to obtain medical evidence. 20 C.F.R. § 404.1512(b)(1)(i). This means that, if the ALJ "make[s] an initial request for evidence from [the claimant's] medical source", and that evidence is not received within a certain time period, he "will make one follow-up request to obtain the medical evidence necessary to make a determination." Id.; see also Aliya A. v. Comm'r of Soc. Sec., No. 20-CV-1004S, 2022 WL 600839, at *5 (W.D.N.Y. Mar. 1, 2022) (interpreting the regulation to require the ALJ to "mak[e] an initial request and one follow-up request"); Avila v. Comm'r of Soc. Sec., No. 20-CV-1360, 2021 WL 3774317, at *13 (S.D.N.Y.

---

³ In Perez, the claimant was represented by a paralegal, not an attorney.

Aug. 9, 2021), report and recommendation adopted, 2021 WL 3774188 (Aug. 25, 2021) ("[i]f the documents received lack any necessary information, the ALJ should recontact the treating physician") (internal quotations and citations omitted).  Of course, given that the requirement to follow up exists only for "medical evidence necessary to make a [disability] determination", an ALJ's obligation here as it relates to the medical source statements in question is circular: if those opinions were necessary to develop the record and make a disability determination, he was required to follow up.  20 C.F.R. § 404.1512(b)(1)(i) (emphasis added).  On the other hand, if the evidence he received in response to his initial inquiries – along with the other evidence in the record – was sufficient to deny Luz's claim, the ALJ arguably was not required to follow up and request the medical source statements again because they were not "necessary" for his determination.  In this way, the Commissioner's two arguments conflate into one.  If she is correct that the record was sufficiently developed to deny Luz's claim, then the ALJ was not required to follow-up to obtain the medical source statements.  But if the record absent those statements was deficient, then the ALJ was required to do just that.

On this second question, the court concludes that the medical source statements were necessary to develop the record.  Although "it is not per se error for an ALJ to make a disability determination" absent the opinion of a treating physician, this court has previously observed that, in practice, Tankisi's "sufficient evidence" standard "is often not met in cases where there is no medical source statement." Delgado, 2018 WL 1316198, at *8; Angelica M. v. Saul, No. 20-CV-00727, 2021 WL 2947679, at *5 (D. Conn. July 14, 2021) (collecting cases where an ALJ's failure to secure a medical source statement led to remand).  Here, the sole medical source statement in the record

7

is from Dr. Giacomazzi, but it is lacking in that it does not include a function-by-function assessment.  AR at 827.  Instead, it is a one-page assessment where he notes Luz's diagnosis as "[c]entral L5-S1 disc protrusion; right shoulder rotator cuff repair"; her course of treatment as "conservative . . . pending possible future surgery"; and her prognosis as "poor."  Pl.'s Material Facts at ¶ 39; Def.'s Material Facts at ¶ 39 (citing AR at 827).  He also states that Luz has "[c]ontinued permanent functional restrictions" that "prevent [her] from returning to her former position as a DDS worker."[4]  Id. (citing AR at 827).

In light of the paucity of medical opinions in the record and the absence of any medical source statement that "explicitly assess[es] [Luz's] limitations and RFC", the court concludes that remand is warranted.  Angelica M., 2021 WL 1947679, at *6.  "[R]emand for failure to develop the record by obtaining a . . . medical source statement depends on the circumstances of the case and [is] only required if the record does not otherwise 'contain[ ] sufficient evidence from which an ALJ can assess the petitioner's [RFC].'"  Id. (quoting Tankisi, 521 F. App'x at 34).  Such is the case here, at least as it relates to Luz's lower back and leg pain.  Based on his review of the record, the ALJ

---

[4] In his Decision, the ALJ does point to four other instances in the record where medical sources proffered opinions.  AR at 20-22.  However, he correctly discounts each of these to some degree, and neither party here claims that those opinions constitute medical source statements.  The letters and ratings of Dr. Flynn and Dr. Babalola are all from dates prior to the alleged onset date of Luz's disability and, as the ALJ noted, neither doctor supported their opinion with objective medical evidence or explained her functional restrictions.  Id. at 21-22.  Third, the State agency consultants were not persuasive at all, as they "largely failed to review any evidence" and "did not have the benefit of treating [Luz] personally."  Id.  Finally, although the letter of Dr. Waitz the ALJ cites in his Decision is from the relevant time period, the ALJ only found it "persuasive in part" because it was conclusory and Dr. Waitz "failed to support his conclusions with objective medical findings or a robust functional assessment."  Id. at 20 (citing AR at 1295).  Indeed, in that letter, Dr. Waltze simply opines that, "[w]ithin a reasonable degree of medical probability, [Luz's] work injuries" have rendered her "totally disabled at this time" and unable "to work as a DDS worker."  AR at 1295.  He does not explain how he came to this conclusion in the letter.  Id.

8

concluded that, during the relevant period, the evidence showed that Luz "had a history of lower back and leg pain . . . caused by her advanced degenerative changes of the spine and herniation of the L5-S1 region, and resulted in an antalgic gait, cane use, tenderness and a reduced range of motion of the lumbar spine, positive straight leg test findings, and trouble rising from a seated position that did not significantly improve with medication or treatment." AR at 20.  In the ALJ's view, this amounted to a "significant functional restriction" but did not support a conclusion that Luz was "categorically disabled." Id.  Instead, "due to [her] back pain and related findings of limitation", along with her "trouble lifting with the right arm, and use of a cane", the ALJ determined that she "is limited to the sedentary exertional level." Id. at 22.

Yet this conclusion ignores ample evidence in the record indicating that Luz's chronic pain was much worse than the ALJ ultimately concluded.  She testified at the hearing that, during the relevant time period, she could comfortably sit for only 15 minutes before having to get up for 15 to 20 minutes, change position, and sit again. Id. at 493-94.  Her health was "so poor and so all over the place", and she was "slowly declining and getting . . . worse." Id. at 497.  Her testimony is supported by medical evidence in the record, including Dr. Matthew's observation during a 2012 visit that she "'appear[ed] to be quite uncomfortable at rest particularly when seated and when transitioning from sitting to standing.'" Pl.'s Material Facts at ¶ 15; Def.'s Material Facts at ¶ 15 (quoting AR at 1035).  Indeed, in that and subsequent 2012 visits, Dr. Matthew opined that Luz was "'totally temporarily disabled'" at that point and "'incapable of work'" because of her "'constant 9/10 pain.'" Pl.'s Material Facts at ¶¶ 15-16; Def.'s Material Facts at ¶¶ 15-16 (quoting AR at 1037, 1050).  There are several other instances in the

record where Luz's chronic pain or difficulty with daily life is documented as similarly severe.  See, e.g., Pl.'s Material Facts at ¶¶ 17, 23, 26; Def.'s Material Facts at ¶¶ 17, 23, 26.  The court highlights this evidence not to call into the question the ALJ's ultimate RFC findings, but rather to emphasize that resolving the gap in the record as to the severity of Luz's chronic pain is "precisely the question[ ]" a medical source statement from one of Luz's treating physicians could address.  Christopher S. v. Kijakazi, No. 20-CV-00753, 2021 WL 4460254, at *11 (D. Conn. Sept. 29, 2021).  At least one medical source statement assessing her function-by-function capacity is thus necessary to fully develop the record in order "to address questions like these."  Id. (remanding for failure to secure a medical source statement that would have shed light on claimant's chronic issues and provided a function-by function assessment of how those chronic issues impacted his ability to work).

For these reasons, remand for failure to develop the record is warranted here.  On remand, the ALJ should seek a medical source statement at least one of Luz's treating physicians from the relevant period who is able to knowledgably opine on these issues and provide a credible assessment of her function-by-function capacity.  "Because the record was not fully developed, the court does not reach the other issues raised by [Luz] or assess whether the ALJ's findings were supported by substantial evidence."  Id. (citing Cordova v. Saul, No. 3:19-CV-0628, 2020 WL 4435184, at *5 (D. Conn. Aug. 3, 2020), holding that "[w]here, as here, an ALJ fails to adequately develop the record in reaching a conclusion on a claimant's [RFC], the Court is unable to review whether the ALJ's denial of benefits was based on substantial evidence") (internal quotations and citations omitted).

## V. CONCLUSION

For the reasons stated above, the court vacates the ALJ's Decision and remands for further proceedings consistent with this Ruling, thereby denying the Commissioner's Motion for an Order Affirming the Decision of the Commissioner (Doc. No. 19) and granting in part and denying in part Luz's Motion to Reverse the Decision of the Commissioner (Doc. No. 17), insofar as her Motion seeks an order reversing the ALJ's Decision.

The Clerk is instructed to close this case.  The Clerk's Office is also instructed that, if any party appeals to this court the decision made after this remand, any subsequent social security appeal is to be assigned to the undersigned.

**SO ORDERED.**

Dated at New Haven, Connecticut this 24th day of March 2022.

/s/ Janet C. Hall
Janet C. Hall
United States District Judge
